CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUL - 9 2019
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **WILLIAM F. MILGRIM, JR.,** | ) | CASE NO. 7:18CV0048 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | |
| **HAROLD W. CLARKE**, *et al.*, | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Plaintiff William F. Milgrim, Jr., a Virginia inmate proceeding pro se, has filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] The matter before the court is the motion for summary judgment filed by defendants Harold W. Clarke, Bernard Booker, Nurse Pamela Shipp, Stacy Meinhard, and Carmen Rodriguez. Upon review of the record, I conclude that the defendants' motion must be granted.

I.

Milgrim filed this § 1983 action against defendants Virginia Department of Corrections ("VDOC") Director Clarke, Warden Booker, Nurse Shipp, Grievance Coordinator ("GC") Meinhard, and Regional Ombudsman ("RO") Rodriguez for alleged constitutional violations.[2] Milgrim seeks only injunctive relief. The defendants have filed a motion for summary judgment and Milgrim has responded, making the matter ripe for disposition. Liberally construed, Milgrim's claims are that: (1) Nurse Shipp, Director Clarke, and Warden Booker acted with deliberate indifference to Milgrim's serious medical needs; (2) GC Meinhard and RO Rodriguez restricted

---

[1] I have omitted internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. See United States v. Marshall, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

[2] On August 2, 2018, I granted Milgrim's motion to amend his complaint and severed and transferred his claims against defendants Steve Herrick, Dr. Leon Dixon, Nurse Laurie Hightower, and Dr. Levester Thompson to the United States District Court for the Eastern District of Virginia. ([ECF 41]).

his access to the courts; (3) defendants did not follow proper VDOC procedure with respect to Milgrim's grievances; and (4) the Prison Litigation Reform Act ("PLRA") is unconstitutional.[3]

II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative." Anderson, 477 U.S. at 249.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. Celotex, 477 U.S. at 322-24; Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to

---

[3] To the extent that Milgrim makes a retaliation claim based on his transfer from Nottoway Correctional Center ("Nottoway") to Buckingham Correctional Center ("Buckingham"), I conclude that this claim was transferred to the Eastern District of Virginia. ([ECF 41]).

2

defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Instead, the nonmoving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. Abcor Corp. v. AM Int'l, Inc., 916 F.2d 924, 930 (4th Cir. 1990) (quoting Anderson, 477 U.S. at 249-50).

Milgrim is proceeding pro se and, thus, entitled to a liberal construction of the pleading. See, e.g., Erickson v. Pardus, 551 U.S. 89, 90-95 (2007). However, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "A court considering a motion [for summary judgment] can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Notably, a plaintiff must sufficiently allege a defendant's personal act or omission leading to a deprivation of a federal right. See Fisher v. Washington Metro. Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982) (abrogated on other grounds by Cty. of Riverside v. McLaughlin, 500 U.S. 44 (1991)). Negligent deprivations are not actionable under § 1983. See, e.g., Daniels v. Williams, 474 U.S. 327, 330 (1986); Pink v. Lester, 52 F.3d 73, 77 (4th Cir. 1995).

III.

A. Medical Treatment

The uncontested evidence establishes that Milgrim is confined at Buckingham, a prison facility operated by Virginia Department of Corrections ("VDOC"). Milgrim was transferred to Buckingham from Nottoway on January 29, 2016.

Following Milgrim's transfer to Buckingham, on January 29, 2016, the medical staff conducted an Intrasystem Transfer Medical Review. (See Shipp Aff. 1, [ECF No. 59-1]). Milgrim receives treatment and medication for a chronic cardiac condition, hypertension, diabetes, allergies, and other ailments. (Id. at 2-3). Per VDOC Operating Procedure ("OP"), Milgrim has follow up appointments approximately every six months for his chronic care conditions. See VDOC OP 720.2(V)(2).

On February 10, 2016, Milgrim was seen for his first chronic care appointment at Buckingham. (Shipp Aff. 3). Milgrim reported chest pains at that appointment and was transported to VCU Pauley Heart Center for evaluation and treatment. (Id.) At VCU, Milgrim received two stent implants. (See Am. Compl. 17, [ECF No. 40]).

On July 22, 2016, December 28, 2016, and June 23, 2017, Milgrim was seen for his chronic care appointments. (Shipp Aff. 3-5). As a result, doctors and nurse practitioners conducted various lab tests and made modifications to Milgrim's treatment plan. (Id.) During Milgrim's chronic care appointment on January 4, 2018, he requested to see an eye doctor and was scheduled for the next available appointment. (Id. at 6; Am. Compl. 15). Milgrim failed to make that eye appointment on May 15, 2018. (Shipp Aff. 7).[4]

---

[4] Milgrim asserts he was not told about the eye doctor appointment on May 15, 2018. Nurse Shipp, in her affidavit, stated that Milgrim was on the master pass list and the list was distributed. To the extent it can be construed that Milgrim claims that the delay in his seeing an eye doctor is the cause of the constitutional violation, the plaintiff must also demonstrate that the delay in medical treatment caused the

4

On July 20, 2018, Milgrim was seen for his next chronic care appointment. He asked again to see an eye doctor and was scheduled for the next available appointment. (Id.) After submitting an informal grievance about missing his first eye doctor appointment and the urgency of his need to see the eye doctor, Milgrim met with Major Goldman on August 1, 2018. Major Goldman told Milgrim he would try to schedule Milgrim for an eye doctor appointment in September due to the high volume of inmates requesting eye doctor appointments. On September 17, 2018, Milgrim saw the eye doctor at Buckingham and was referred to a specialist at VCU. Since November 13, 2018, Milgrim has seen the specialist at VCU for treatment at least three times.

To state a claim for denial of medical care or inadequate medical treatment under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate deliberate indifference to a serious need. See Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Disagreements between an inmate and the medical staff over diagnosis or course of treatment are not cognizable constitutional claims under the Eighth Amendment. Wright

---

plaintiff "substantial harm." See Barley v. New River Valley Regional Jail Medical Dept., No. 7:16CV00280, 2017 U.S. Dist. LEXIS 30782, 2017 WL 888367, at *5 (W.D. Va. Mar. 6, 2017) (quoting Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)); see also Webb v. Hamidullah, 281 F. App'x 159, 166-67 & n.13 (4th Cir. 2008) (explaining that where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must demonstrate "that the delay resulted in substantial harm"). Here, Milgrim fails to plead the necessary facts to demonstrate that he has suffered any substantial harm due to the delay or that such delay was caused by the defendants in this case. First, the majority of the events and delays that Milgrim describes relating to his eye care in prison occurred at Nottoway and involved officials at that facility, See Compl. 14-15. As stated, I have transferred his claims about those events to the Eastern District for disposition. Second, Milgrim fails to plead sufficient facts showing that Nurse Shipp, or any other defendant, was involved in causing delay of medical care while he was at Buckingham. Finally, Milgrim has failed to plead an injury caused by the delay.

v. Collins, 766 F.2d 841, 849 (4th Cir.1985). Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318 (4th Cir.1975).

Because Milgrim's diabetes and cardiac condition constitute a sufficiently serious medical need, the question is whether the defendants acted with the requisite subjective deliberate indifference towards Milgrim's medical needs. With respect to Nurse Shipp, the only named medical professional defendant, Milgrim does not plead sufficient facts to demonstrate that she failed to provide or ensure the needed care was available or that she acted with "a sufficiently culpable state of mind." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016). Milgrim's allegation that Nurse Shipp failed to provide life-sustaining cardiac medication is conclusory and unsupported by facts. See Am. Compl. 12. His vague generalizations fail to demonstrate that Nurse Shipp "actually knew of and disregarded a substantial risk of serious injury . . . or that she actually knew of and ignored a . . . serious need for medical care." Goodman v. Runion, 676 F. App'x 156, 159 (4th Cir. 2017) (quoting Young v. City of Mt. Ranier, 238 F.3d 567, 576 (4th Cir. 2001)).

The evidence demonstrates that Nurse Shipp, in her limited role as health care provider to Milgrim, followed the direction of the treating physicians when dispensing medication to Milgrim, and that she responded to grievances pursuant to VDOC policy. In fact, one of the nurses supervised by Nurse Shipp responded to a grievance, directing Milgrim that he must submit a request for an eye appointment as it was not part of his chronic care treatment. See Exh. 47, at 209 [ECF 71-1]. Milgrim may disagree with the treatment that Nurse Shipp provided, but such a disagreement is insufficient to state a constitutional claim. See Scinto, 841 F.3d at 225 ("mere disagreement between an inmate and a physician over the inmate's proper medical care are not actionable absent exceptional circumstances.").

6

As for Director Clarke and Warden Booker, Milgrim does not allege that they personally participated in his medical treatment. Claims of inadequate medical care under the Eighth Amendment against a non-medical prison official require facts showing that the defendant was personally involved with denial of treatment, or tacitly authorized or was indifferent to the medical provider's misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir.1990) (overruled on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994)); Smith v. Barry, 985 F.2d 180, 184 (4th Cir. 1993). Instead, Milgrim attempts to hold Director Clarke and Warden Booker culpable as non-medical prison officials in their capacity as Shipp's supervisors. A supervisory officer may not be held liable merely under a theory of respondeat superior in a § 1983 action. See Monell v. Department of Social Services, 436 U.S. 658, 690-92 (1978); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Rather, supervisory liability requires facts showing: (1) that the defendants had actual or constructive knowledge that their subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to Milgrim; (2) that the defendants' response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the defendants' inaction and the particular constitutional injury suffered by Milgrim. See Shaw, 13 F.3d at 799. Non-medical personnel can rightly rely on the expertise of the prison's doctors and nurses to determine the appropriate course of medical care for an inmate's conditions. Miltier, 896 F.2d at 854.

Milgrim fails to allege any basis for personal or supervisory liability by the non-medical defendants. Regarding Director Clarke, Milgrim relies on conclusory allegations and fails to plead this claim with any specificity. Milgrim merely alleges that Director Clarke was aware of Milgrim's ongoing condition because of his position, yet did nothing. However, Milgrim fails to

establish that Director Clarke was personally involved in Milgrim's medical treatment. Milgrim similarly fails to establish that Warden Booker was personally involved in his treatment. Milgrim only alleges that Warden Booker supervised Shipp and could "remedy her failures." See Am. Compl. 2. However, because Milgrim has failed to establish that Shipp violated Milgrim's constitutional rights, any claim that Warden Booker is liable as her supervisor must also fail. Moreover, Clarke and Booker could trust the medical judgment of Milgrim's treating physician regarding the urgency of Milgrim's need to see an eye doctor or to receive different medication for his chronic conditions. Accordingly, the medical treatment claims against Nurse Shipp, Director Clarke, and Warden Booker will be dismissed.

B. Access to Courts

Milgrim's second claim alleges that GC Meinhard and RO Rodriguez denied Milgrim access to courts. Milgrim asserts that GC Meinhard "engaged in a campaign of harassment that includes, but is not limited to, witness intimidation, threatening a witness, unlawfully reading, seizing, and destroying evidence to be filed" in Milgrim's cases. (Am. Compl. 38). Milgrim alleges that GC Meinhard's behavior interfered with his ability to procure sworn testimony in support of this action and a Virginia state habeas corpus petition. Milgrim's only complaint against RO Rodriguez is that she supervised GC Meinhard and upheld GC Meinhard's grievance decisions. (Am. Compl. 12, 37).

An access to the courts claim "must state with specificity the underlying cause of action, whether anticipated or lost, and must also identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Hopkins v. Clarke, Case No. 16CV00210, 2016 U.S. Dist. LEXIS 144446, at *5, 2016 WL 6092719, at *2 (W.D. Va. Oct. 19, 2016); Strickler v. Waters, 989 F.2d 1375, 1384 (4th Cir. 1993) (holding that the prisoner had a

8

"basic requirement that he show specific harm or prejudice from the allegedly denied access"). Here, with respect to GC Meinhard, Milgrim relies on conclusory allegations. He fails to plead this claim with any specificity or to identify a resulting harm. Milgrim alleges that GC Meinhard destroyed a typed affidavit, but he also acknowledges that after rewriting the affidavit, he was able to submit it as evidence in this action. (Am. Compl. 43). Milgrim also argues that he requested and was denied access to his medical records by GC Meinhard. The record indicates that Milgrim received copies of his medical records at least 18 times between January 29, 2016 and August 14, 2018. (Shipp Aff. 1-7). Milgrim does not identify any specific document from the record that he was unable to procure or that lack of such document caused particular harm to his litigation efforts. Milgrim also fails to plead any injury resulting from GC Meinhard's policy for inmates to sign in and out of the law library.

Milgrim also fails to assert a plausible claim of supervisory liability against RO Rodriguez. Milgrim claims that RO Rodriguez was aware of GC Meinhard's actions, because RO Rodriguez responded to Milgrim's complaints. Simply "ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007). Morever, Milgrim's speculative and conclusory allegations that RO Rodriguez worked with GC Meinhard to retaliate against Milgrim are not supported by facts. Conclusory allegations of retaliation cannot support an actionable § 1983 claim. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

For the reasons stated, Milgrim has failed to present facts on which he could persuade the fact finder that the defendants' actions violated his right to access the courts. Therefore, I will grant defendants' motion for summary judgment as to this claim.

C. Grievance Procedure

Milgrim alleges that the defendants violated VDOC policies regarding grievance and appeal procedures. While state regulations may provide for more stringent procedural protections than the Constitution requires, "a state's failure to abide by its own law as to procedural protections is not a federal due process issue." Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. 1996) (citing Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)). Moreover, "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams, 40 F.3d at 75. Therefore, Milgrim has no cognizable § 1983 claim against the defendants for the VDOC policy violations alleged in this claim. Accordingly, I will grant defendants' motion for summary judgment as to this claim.

D. PLRA

Milgrim makes a general claim that the PLRA violates the Equal Protection Clause of the United States Constitution. Milgrim asserts that the sole purpose of the PLRA is "to reduce government workload, save money, save time, and gives the government an unconstitutionally unfair advantage in litigation filed against them." (Am. Compl. 50). The Fourth Circuit has reviewed the PLRA under the rational basis test and determined that the PLRA's "equal protection question is not a close one. The legislative solution is entirely rational, does not violate any fundamental rights, and does not single out a suspect class for disparate treatment. We therefore hold the PLRA amendments to 28 U.S.C. § 1915 to be constitutional." Roller v. Gunn, 107 F.3d 227, 234 (4th Cir. 1997); see also Wilkins v. Gaddy, 734 F.3d 344, 351 (4th Cir. 2013) (Upholding the constitutionality of the PLRA's cap on attorney fees). Accordingly, I conclude Milgrim has not stated a claim under § 1983.

IV.

For the foregoing reasons, I will grant defendants' motion for summary judgment. An appropriate order will enter herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the parties.

ENTER: This 9th day of July, 2019.

*[signature]*
Senior United States District Judge